Next case up is Bradshaw v. Federal Aviation Administration and we will hear from Mr. Webb when he is ready. Good morning your honors, I'm setting my time here, thank you. May it please the court, I am Jack Webb representing Mr. Walter Bradshaw, as court is aware no doubt we are here challenging the termination of a pilot examiner certification that is by the FAA pursuant to its authority under 49 U.S. Code section 44702 sub d. We challenge the scheme in which, the procedural scheme in which the FAA ultimately decided to terminate for cause Mr. Bradshaw's designation. Now as courts aware in our papers below and in our response, excuse me, our reply brief to the response of the government, we make the argument that the CFR provides a very comprehensive scheme for dealing with FAA matters, 14 CFR part 13 provides for investigative enforcement procedures. Counsel hi this is Robert Luck, do you at the time of the appeal or at any time in the proceedings before the FAA state that 14 CFR proceedings should apply in this case? No your honor, actually it goes to the issue exhaustion issue I assume where your honors is. Before we get there I wanted to get your answer to that and I appreciate your answer. My next question to you is, did you not or did counsel, I'm not sure if you were the one representing the petitioner below, but did counsel not specifically state that the 800, I'm sorry the 8900 order applied below? I don't know the answer to that your honor. Well let's look at the administrative record because I have that in front of me, so if we can turn to pages, we turn to page 356 where counsel on behalf of Mr. Bradshaw wrote in the initial appeal quote, you may consider this a request for appeal pursuant to FAA order 8900.2B chapter 4 paragraph 4C. And then in later, the later supplemental letter, this is at 372 of the administrative record quote, since FAA order 8900.2B addresses the appeal process as formally done through the regional offices which no longer exist, could you please advise us of the status of the appeal and to whom the letter was sent? Is that not affirmatively stating that the appeal process is pursuant to order 8900? Well your honor, I guess that the correspondence speaks for itself. The counsel below at the administrative level was relying upon the representations of the FAA that that rule, that order 890.1 applied, however, I would counsel, yes your honor? I'm looking at Judge Carnes, I'm looking at the same letter that Judge Locke quoted from and it doesn't refer to any reliance on the FAA, it says I've been retained by Mr. Bradshaw to represent him and regarding the termination, you may consider this a request. He doesn't say as you've informed me or as your bulletin brochures or notices provide, he doesn't say that at all. This man, I believe, is experienced in this area, quite experienced, is he not? The attorney at the time, he talks about having 25,000 hours total flying time, certified flight instructor and all that kind of stuff and you read the letter, it's obvious he is conversant with these kinds of tests and with the procedures, am I wrong about that? Your honor, I would concede 100% the court, the counsel below is very well versed in operating airplanes and in technical matters, however, I would question whether or not counsel below was expert or up to speed on the vagaries of administrative law. And you would question that because you know him and his lack of experience or are you just inferring that since he disagrees with you on this issue, he must not know what he's talking about? No, I just don't think the issue of the appropriateness of the internal FAA order was ever an issue that was able to be fully developed on the record. I understood you to say he was relying on the FAA having told him to bring it under order 8900 and I'm just trying to find out what's the basis for your representation to us that the FAA had misled him in this respect. I don't think the FAA did mislead him in that respect, your honor. I think the FAA in their heart of hearts believes that that order is the appropriate one to be followed. Counsel, you're evading my question. My question is what communication is in the record between the FAA and Mr. Day, his attorney, petitioner's attorney at that time, in which the FAA tells him that 8900 controls this procedure? The termination, your honor, is my understanding. I think the FAA, the FAA, the record reflects the fact that the termination was pursuant to that order and the appeals flow from that order, your honor. But that said, we rely upon in our papers, your honor, the Acardi v. Shaughnessy 347 U.S. 260 states that a party can always challenge an agency's failure to follow its own procedures at any time. It's a 1954 case. And your honor, if I may, with respect to the issue exhaustion at the administrative level, the government relies upon a couple of cases. But basically, the case law says that, again, there has to be a procedure below for purposes of issue exhaustion that essentially mimics an adversarial litigation proceeding. And I would argue that the procedures pursuant to 8900.1 subparts does not reflect the due process that would ordinarily be afforded to a petition or a litigant in a court environment or pursuant to subpart D of the FAA's own rules. But doesn't that, if we're, counsel, this is Robert Luck, if we're moving on to the due process argument, which is what I hear you doing, doesn't that presuppose some sort of constitutionally protected property or liberty interest? No, your honor. Actually, it's a great question because prior cases that have been let me back up, your honor, and answer the question this way. The protected liberty interest or protected property right interest implicates constitutional consideration, which gets the petitioner under the jurisdiction of review of the court. And it opens up the court's jurisdictions, again, because ordinarily agency deference would preclude review of the final order. However, to the extent that the constitutional issue is raised, then, again, the court can review it. The courts have been very, very reluctant to recognize either a property interest or a liberty interest in the designation for a variety of reasons. I don't necessarily agree with, but the rulings are what they are. We have two minutes remaining. Thank you. But to the extent, your honor, that there is a property right is not a fundamental right under the Constitution, whereas equal protection or due process and the due process affording and consistent or compliant with the Equal Protection Clause is a fundamental interest. And as the court properly said, what case was it? It was just the Florida voting rights case, the Jones case. We look at the law through a different prism, however, when the law classifies in certain suspect ways, prototypically on the basis of race, gender, and national origin, or classifies in a way that burdens fundamental rights. Such classifications are subject to heightened scrutiny or more exacting form of review. Your honors, we can see that Mr. Bradshaw is not a member of a suspect class. I mean, I get that. But the bottom line is that he, again, a fundamental right under the Constitution, the 5th and 14th, has been implicated by virtue of the, let me check my time here, hold on, by virtue of the disparate treatment, I have 34 seconds left, by virtue of the disparate treatment afforded Mr. Bradshaw, as compared to other designees, such to an extent that a heightened level of scrutiny should be applied to the FAA's rationale for so doing. Counsel, you've already said he's not in a suspect class, so how are you saying that rational basis review is not how we would evaluate this? Because the classification, although it's not applied to a suspect group, still impugns or impinges upon a fundamental right. There's my time, your honor. May I continue to answer the question? Please. Yes. Let me turn this off, I apologize. There you go. Yeah, your honor, rational basis, we would argue, does not apply in this case. Because the classification, although it's not subject, it's not turned towards a suspect class, it still impugns or impinges upon a fundamental right, which is equal protection and due process. Counsel, that's circular as it can be. Every classification difference impugns upon equal protection if you assume that it violates equal protection. I mean, that makes no sense whatsoever. What you're arguing is heightened scrutiny because DPEs are treated differently than airmen and other people. And the FAA has a very good explanation for that on a rational basis. But we will hear from you with your remainder of your five minutes. And we'll hear now Mr. Handel. Good morning, your honors. I may have pleased the court, Josh Handel, on behalf of respondent, Federal Aviation Administration. In the Federal Aviation Act, Congress gave the FAA administrator discretion to designate private persons who would act as pilot examiners on his behalf and empowered the administrator to rescind such designations, quote, at any time for any reason he considers appropriate, end quote. Within that broad grant of statutory authority, the agency has promulgated procedures for terminating designations and for reviewing such determination decisions. That process is spelled out in FAA Order 8900.1. With that background in mind, I'd like to briefly touch on three points this morning. First, that Order 8900.1 encompassed the appropriate set of procedures governing Mr. Bradshaw's termination and appeal. Second, that the FAA complied with the requirements of Mr. Bradshaw. Counselor, I want to ask you if you could, I'd like you to fast forward to that second part about 8900. I'm highly doubtful that your opposing counsel or that Mr. Bradshaw preserved any argument that Title 14 of the CFR applies here. But I think we can all agree at least that 8900 applies. And so I'd like to ask a couple questions about that. As I understand 8900, both 8900.2a and 8900.1, the lack of renewal or the failure to renew or the decision not to renew is the equivalent of termination. Is that true or not true? That is correct, Your Honor. In fact, termination is either removal or cease and desisting or the decision not to renew, correct? I believe that's correct, yes. Okay. Define for me what involved means. If someone is involved, what does that mean to you? Sure. So I think if the question is involved in a decision, then... Well, my question was broader than that, but sure. Okay. Well, yeah, sure. Just taking involved by itself, I think that it means to have some influence on. And so, and I assume that... Do you think it's even influence? Do you think involved is directed at influence? Isn't involved could be filing paperwork. Isn't it some participation? In other words, it has to be short of influence to be involved in something, right? Well, Your Honor, I think you could take that broader view of it, and that's perfectly fine. And I think even under that broader view, even if it means just participation in some manner or to some degree, Mr. Bradshaw has not shown here... I'm sorry. I didn't mean to cut you off. No, no, no. That's fine. And I think that definition is probably a fair one. So let's fast forward to where you're going, which is supplemental record page 10. So here, is it Mr. Woodcock? Is Mallory a man? I believe he is, yes. Okay. So Mr. Woodcock has asked a bunch of people, including Alvaro Gill, lays out some of the facts and says, hey, Mr. Bradshaw, in addition to all that's going on, is up for renewal, can we suspend the renewal process based on the ongoing investigation? And Mr. Gill writes back and says to inform him, meaning Bradshaw, that all designee activity must stop, and that in the interim, to hold off on the renewal. But of course, action must be taken depending upon the outcome of the investigation. If the failure to renew or the decision not to renew is termination under the order, and Mr. Gill's direction is to hold off on renewal, isn't that involvement in the renewal decision? I don't think so, Your Honor, because I think there is an important distinction between suspension of the renewal process that doesn't come to any determination as to whether the designation will be renewed or will not be renewed. It's just a pause in the determination of renewal. There's a distinction between that and, on the other hand, an affirmative decision not to renew. And I think that there are important... But the rule, and I'm looking at 8,900, we're looking at 8,900, and it's 0.1, and it's the F, the appeal of termination, and then it's sub 2. It states that the appellate panel will consist of at least three persons equivalent to the specialist level above who were not involved in the original denial or termination decision. If the suspension of renewal, how is the suspension of renewal not an involvement in the termination decision? I understand that it's not the final decision, but how is it not involved in the termination decision if we're saying, while this investigation is going on, you are to hold up and stop and suspend the renewal, and you are to tell them to cease and desist all activities? Well, because I don't think that Mr. Gill and Mr. Kitchen's advice to Inspector Woodcock that it is permissible under these circumstances to pause the renewal process in order to allow time to look into the report the FAA had received and to determine whether any corrective action was warranted. I don't think that that advice rested on any preliminary determination as to the merits of these allegations or as to the merits of any particular corrective action. And I think the only thing here that actually qualifies as termination, as a termination decision that triggers appellate rights under Order 8900.1 is a decision not to renew for a cause or a decision to terminate a designation early for a cause. When a regional officer decides to issue the letter, that comes with a cease and desist determination, does it not? Yes, that's correct. And that's the ultimate, that's the termination decision when the regional officer or regional director issues that letter, and that's the thing that can be appealed, right? That is correct, Your Honor. Okay. So if part of that is the cease and desist, and Mr. Gill is telling Mr. Woodcock to tell Mr. Bradshaw that all designee activity must stop, in other words, cease and desist, isn't that in the termination decision? No. Again, Your Honor, respectfully, I do not agree with that characterization. I think that a suspension of the process and an instruction that obviously while the renewal process is suspended, while the aviation safety inspector is investigating these claims that have been raised against a designated pilot examiner, that is not equivalent to a determination on the merits that certain factual findings have taken place, and that as a result, termination is the appropriate... But the rule doesn't require involvement in factual findings, it just requires involvement in denial or decision, right? Well, the process here is there are factual findings by the aviation safety inspector, and then it goes to the office director who makes the final call on whatever the remedial training or non-renewal or termination. And so the text here says involved in the termination decision. And again, I think that here the record is clear that Gill and Kitchens weighed in on only a very narrow procedural question, which was whether... Let me ask you this. Let me ask you this. I have some district court colleague friends. And if one of my district court colleague friends who serves in, let's say, Miami, calls me up and tells me a and says that they have a TRO, a temporary restraining order, in front of them and, you know, what do you think I should do? And I write back or I call back and say, you know what, I would tell them to halt or cease and desist all activities. In other words, grant the TRO pending an ultimate final decision. And then much later on, that same case is appealed and I'm assigned to the panel. Am I involved in the decision in any way such that I should recuse myself? I don't know, frankly, Your Honor, whether recusal would be appropriate there. I think that it would depend on the facts of the case and it would be up to Your Honor's discretion. I think that a TRO is a little bit... Well, I guess my question is, was I involved in the original denial or termination decision? I think to the extent that you offered substantive comment on the merits of the allegations or the legal question below, then you may have had some involvement in the TRO decision. And so if the question is, you know, can you participate in an appeal of the TRO decision, then that might be a much closer question than what we have here. Here, I think two things distinguish. First is that unlike in, you know, the TRO or preliminary release context in the federal court, there's no indication here that Mr. Gill or Mr. Kitchens had any substantive comment on the merits of these allegations here. They didn't have to reach any sort of preliminary determination that these were, you know, prima facie meritorious allegations or that the facts underlying them had some merit or anything like that. And then I think secondly is that Mr. Bradshaw, what he actually appealed was not the preliminary or interim suspension of his renewal process. It was the later termination decision. And so in the case that, or in the hypothetical that you're on or posited, it would be like not as if the district court or as if one of the litigants appealed the TRO specifically, but as if several stages down the line in the litigation, there was an appeal of another determination to the court. And I think in that situation, the involvement with the TRO would have much less force in terms of any sort of, you know, militating in favor of recusal. I do, you know, want to reemphasize, and I think that your honor mentioned it also that we think that all of this is waived because Mr. Bradshaw never raised any of these claims to the FAA. He never mentioned section 13.20 in his submission to the agency. To the contrary, in his appeal letter, Mr. Bradshaw's counsel cited provisions of order 8900.1 in his client's defense. This is an administrative record 360, including a paragraph of that order that allows aviation safety inspectors, the measure of discretion and fashioning corrective steps. So there was agreement, affirmative agreement among all parties below that order 8900.1 set the appropriate process for terminating this designation and for appealing that termination. I do not think Mr. Bradshaw has made out any sort of a claim that this appeal panel was biased or conflicted or that Mr. Gill or Mr. Kitchens, again, very preliminary and sort of marginal input on just a narrow procedural question about the propriety of suspending renewal when an investigation is warranted to determine whether corrective action is necessary, has anything to do with the later termination decision that Mr. Bradshaw appealed. I'm happy to answer any questions that your honors have about the constitutional claims. I think that the panel was correct in your somewhat skeptical questioning to my friend about whether there's any sort of cognizable due process injury here. We certainly don't think the equal protection claim has any merit whatsoever. I had understood from the briefs that the parties were on the same page that because the distinctions between different types of designees do not trigger any suspect classifications, rational basis is the appropriate analytical framework here. So the government is certainly of the opinion that neither the due process nor equal protection claims avails here. And I'm happy to answer any other questions that the court may have about the proceedings below the constitutional or procedural issues or anything like that. Thank you, Mr. Hant. I don't hear any questions. You got it, you know, their argument you got a little time left. No, your honor, I don't want to belabor this. I think that, you know, at the end of the day, Mr. Bradshaw received the process. He was due under FAA order 8900.1, which was the specific set of procedures established by the agency for terminating designated pilot examiners and adjudicating appeals from such terminations. He never complained to the agency that he was entitled to the procedures of 14 CFR section 13.20. And because he was not a regulated entity subject to a legal enforcement action, he was not entitled to those procedures. He received specific notice of the reasons for his termination and an opportunity to contest those reasons in writing and through counsel before a three-member panel. That panel considered and rejected his arguments, and there is no reason for this court to set aside that determination. So unless the court asks further questions, I respectfully request you deny the petition for review and sustain the agency action. Thank you. Thank you, Ms. Handel. Mr. Webb, you've got five minutes. I want to take you back to the FAA. The FAA may have caused your client, represented by another counsel at that time, to have fought that 8900 rule or order 8900 applied instead of the CFR. And when I pressed you on it, you said the letter of termination was the source of that misunderstanding or misleading by the FAA. I've looked at the letter, and it says in the first paragraph, it informs your client that he is terminated pursuant to Title 14 of the Code of Federal Regulations, various parts. And then the second letter said the reason he's being terminated is for not performing his duties under his designation, and it specifies that he violated the standards as required by the CFR and FAA Order 8900, that he also violated the standard in FAA Order 8900-2B Chapter 7, Section 2 in a different way, and then in a third way he did it. The only references to he violated. The letter does not sign the procedures in 8900, and it certainly doesn't tell him that those procedures will apply to any appeal that he files. What am I missing? Your Honor, can you all hear me? Yes. Okay. Thank you, Your Honor. Your Honor, the letter speaks for itself. I think that if you're requesting was there any, if the court is asking did Mr. Guillavaro or anybody else or Mr. Kitchens from the FAA say 8900 is the appeal process or is the order that guides the appeal, I can see that there probably was not that affirmative representation. And quite honestly, Your Honor, I believe that at this point, both the FAA and the counsel below were on the same page that 8900.1 would control the termination. As I said before, the issue was not raised below before, Your Honor, in large part because the process that's afforded to petitioners, excuse me, or to designees under 8900 is kind of a reactionary one-way street. It's not consistent with subpart D, which provides opportunities for hearings and whatnot and discussion. Well, the procedure, counsel, we were discussing originally whether or not your client in fact invited the error or at the very least didn't object to it because in his appeal letter, the attorney on behalf of your client said that he was filing the appeal pursuant to 8900. And then you said, oh, but the FAA misled him or told him to do that. Now, I can't find anywhere the FAA told him to do that. Okay, Your Honor, to the extent that I stated that, I apologize because that's not my position. As I said before, I don't believe that. I think that there was a tacit understanding amongst all between the petitioners, the DPEs at large across the here at this level based on the fact that we do not believe that the application of 8900 is even consistent with the FAA's own internal orders. In which case, you should have raised it with the FAA, which would have led to an informed decision by the FAA and we would have known what their position was on that and why. Well, it goes to the exhaustion of the remedies. Again, I cite to the case of the FAA that the FAA relies upon in asserting that there should be issues that the court should not consider this argument because of the issue exhaustion that should have occurred at the administrative level. But it's interesting in that the FAA in that particular situation, it was subpart D that applied below. So the petitioner in that particular case had the benefit of subpart D where he should have raised these issues. But in that particular case, it's kind of moot because the FAA... Well, it's not just the case. It's basic or a court can consider objection to an order of the FAA, quote, only if the objection was made in the proceeding conducted by the FAA, Federal Aviation Administration, or if there was reasonable ground for not making the objection in the proceeding, period, end of quote. So it's a statutory exhaustion requirement. Well, Your Honor, I think the statutory requirement or exception would be satisfied by the absence of the lack of normal adversarial litigation procedures below. But Your Honor, if I may, I would like to very quickly raise one other point with regards to involvement of Alvaro, Mr. Gil Alvaro. I believe, Judge Luck, you were asking whether... I think it's the position of the FAA that Mr. Alvaro was only involved to the extent... Your Honor, I think I'm close to my time. If I may conclude with this comment. You're wasting your time asking this, Matt. Go ahead. Thank you very much. I think the government has asserted that Mr. Alvaro was only involved in the decision to stop the renewal process. However, I refer to Supplemental Record 0001. It states this is a SPAS, S-P-A-S, N-P-P-R-S record list and comments... Counsel, your time has expired. Your Honor, may I continue? Finish that. I'm sorry? Finish that sentence. Thank you. DPE renewal application is hereby suspended pending investigation into improper testing at 1129 ASI Woodcock called DPE Bradshaw and issued an order to stop, cease, and end all testing activity. This directive was recommended by ASA Gil Alvaro during the investigation process. Your Honor, in the absence of counsel... That's in the email. I mean, we know that. That's part of the record. Correct, Your Honor. I just want to bring it back to the court's attention is all. Okay. That's the argument on that case. We'll take case under submission.